S. RICHARD JOHNSON, Appellant, *v.* EDWIN D. MORGAN, Respondent.

M. and others had been a committee of the bondholders of the T. and N. O. R. R. Co., to effect a reorganization of the company ; failing in this they, acting for themselves and the owners of the bonds in their hands, entered into a contract with defendant by which they agreed to sell, and he to purchase the bonds of said company at fifty cents on a dollar for the first mortgage land-grant bonds, one-third cash, the balance "in satisfactory paper." It was further agreed that all holders of said bonds, who had registered them, should have the option of accepting the same price and terms. In an action upon the contract by plaintiff, who held some of the bonds but who was not one of the parties to the agreement, *held*, that defendant did not agree to purchase of each bondholder, nor to pay to each the purchase-price, but to purchase of and to pay M. and others, the parties named in the contract, and through them only could the option given to other bondholders be consummated; that the agreement of defendant was, in substance, to purchase of the other parties to the contract the bonds they then held as agents or otherwise, and all that they might thereafter obtain by the acceptance on the part of the holders of the option named; and that, therefore, plaintiff could not recover.

(Argued February 9, 1877; decided February 20, 1877.)

APPEAL from judgment, in favor of defendant, of the General Term of the Court of Common Pleas, for the city and county of New York, entered upon an order overruling plaintiff's exceptions and directing judgment dismissing the complaint.

This action was brought upon the following contract :

" This memoranda of agreement, made this eleventh day of August, 1870, between Edwin D. Morgan of the first part and Charles Moran, Charles Congreve & Son, and J. S. Kennedy & Co., of the second part, witnesseth : The said parties of the second part agree to sell to the said party of the first part the bonds of the Texas and New Orleans Railroad Co., and the said party of the first part hereby agrees to purchase said bonds at the rate and price and upon the terms following :

" For the first mortgage land grant bonds the price of fifty

per centum (50 per cent) of the par value of said bonds, one-third of said amount to be paid in cash on the first day of September next, and the balance in two equal proportions in satisfactory paper at three and six months, with seven per cent interest added, the bonds to be held as collateral to said notes until the same are paid.

"And the said party of the first part further agrees that he will pay the obligations of G. T. Crosby, Esq., receiver, now in possession of the said Texas and New Orleans Railroad, under the order or decree of the U. S. Supreme Court, principal and interest, in cash, upon the said first day of September, said obligation having been given for moneys actually advanced to said receiver by said parties of the second part and their associates, under the decree of foreclosure obtained against said Texas and New Orleans Railroad Company.

"And said party of the first part further agrees to pay and assume all the expenses of the suit and foreclosure under which the said decree was obtained, including therein all the fees and payments heretofore actually made on account thereof, and whatever shall be taxed as costs of said suit, counsel fees, receiver's and register's fees, and charges of every name and nature properly belonging to and connected in the said suit of foreclosure. It being hereby intended and understood that the said party of the first part, for himself and those whom he may represent, takes said bonds subject to all claims which may now legally exist against the present holders thereof on account of the said suit, without any reservation whatever.

"And it is further agreed and understood that all holders of said first mortgage land grant bonds who have under the terms of said decree of foreclosure registered their first mortgage land grant bonds, shall have the option of accepting the same price and terms upon which the sale and purchase of the bonds hereby sold to said party of the first part is made.

[Signed]          " CH. MORAN,                    324
                  " J. S. KENNEDY & Co.,          364
                  " CHAS. CONGREVE & SON,          354
                  " E. D. MORGAN."

The figures opposite the names of the parties of the second part represented the numbers of bonds in their hands; they had been a committee of the bondholders for the purpose of foreclosing the mortgage on the road and reorganizing the company. This project was not carried out. Plaintiff held three of the bonds described in the agreement; Kennedy & Co. wrote to him notifying him of the agreement and advising him that he could avail himself of the offer by paying the *pro rata* share of the expenses and five per cent commission; this commission plaintiff refused to pay; he wrote to Mr. Morgan, notifying him that he exercised the option and accepted the proposition, and subsequently tendered to Morgan the bonds, which the latter declined to accept or pay for.

*Samuel Hand* for the appellant. A subsequent ratification of a contract made by an unauthorized agent, is equivalent to an original authority. (Paley on Agency, 324; Wharton on Agency, §§ 61–64; *Routh* v. *Thompson*, 13 East, 274; *Foster* v. *Bates*, 12 M. & W., 226.) The consideration moving from the signers of the agreement, to sell their bonds, was sufficient. (*Lawrence* v. *Fox*, 20 N. Y., 268; *Judson* v. *Gray*, 17 How., 289; *Turk* v. *Ridge*, 41 N. Y., 201; *Burr* v. *Beers*, 24 id., 178; *Burrell* v. *Root*, 40 id., 496; *Barker* v. *Bradley*, 42 id., 316; *Coster* v. *Mayor, etc.*, 43 id., 399; *Glen* v. *Hope Mut. Ins. Co.*, 56 id., 379; *Cooley* v. *Howe Sewing Mach. Co.*, 53 id., 620.) A continuing offer to buy when accepted, binds the promissor. (Chitty on Con., 10, 15, *n.*; *Mactier* v. *Firth*, 6 Wend., 103; *O'Neill* v. *James*, 43 N. Y., 84; *Willard* v. *Taylor*, 8 Wal., 557, 564.)

*Joseph H. Choate* for the respondent.

CHURCH, Ch. J. The learned counsel for the appellant insists that this case is within the principle of *Lawrence* v. *Fox* (20 N. Y., 268), and kindred cases, where it is held that an action lies on a promise made by the defendant upon a valid consideration, to a third person, for the benefit of the

plaintiff, although the plaintiff was not privy to the consideration. Giving the contract the construction claimed for it by the appellant there is considerable force in the position, although there is a distinction between this case and all the others bearing upon this point in two respects: First, there was no debt or duty owing by the third party to the plaintiff; and, second, there was no express promise by the defendant to purchase of the plaintiff, and others standing in the same position, any bonds, or to pay the holders the agreed price for the same. Without stopping to consider whether these differences should take the case out of the rule adopted in the cases referred to, I do not think that the construction of the agreement claimed by the appellant can be sustained. The language of the contract is not as clear and explicit as is desirable, but we must give it a construction, if practicable, to effectuate the real intention of the parties; and to arrive at this result we may look primarily at the language, and we may also consider the surrounding circumstances as well as the subject-matter of the contract and objects and purposes of the parties. The agreement was made between the defendant of the first part and Charles Moran and others of the second part, by which "the said parties of the second part agree to sell to the said party of the first part *the bonds* of the Texas and New Orleans Railroad Co.," upon the terms therein specified. The closing paragraph of the agreement under which the plaintiff claims is as follows: "And it is further agreed and understood that all the holders of the said first mortgage land grant bonds who have, under the terms of said decree of foreclosure, registered their first mortgage land grant bonds, shall have the option of accepting the same price and terms upon which the sale and purchase of the lands hereby sold to said party of the first part is made." The first part of the contract, in terms, obligated the defendant to purchase of Moran, Kennedy & Co., and Congreve & Son, all the bonds of the railroad company; but, as they then possessed only about 4,000 of the bonds, belonging, mostly, as I infer, to other persons, the last clause, above quoted, was inserted, giving

all the holders a right to accept the terms, and include
their bonds in the sale to the defendant.   The clause
was intended for the benefit of the holders of spe-
cified bonds, but the question is, in what manner the
option named was to be consummated.   As before stated
the defendant did not agree to purchase of each bondholder
his bonds, nor to pay to each the purchase-price, but to
purchase of and pay Moran and others for *the bonds*, and the
paragraph in question permitted other bondholders to put their
bonds in on the same terms, but they must do it through
Moran and others.

I do not think that the defendant intended to bind himself
to purchase of each separate bondholder, and to have a
separate transaction with such holder.   His contract was with
Moran and others, and included all the bonds provided for.
The terms of payment agreed upon was half cash and half in
satisfactory paper due in three and six months, and the
construction claimed would require a negotiation with every
separate bondholder in respect to the security.   The agree-
ment in substance was to purchase of Moran and others all
the bonds that they then held as agents or otherwise, and all
that they might thereafter obtain by the acceptance on the
part of the holders of the option named.   The contract was
entire, including outside bonds, and a separate agreement with
each bondholder is inconsistent with its terms as a single trans-
action.   The language used is not the most apt to express this
construction, but the express words in the first clause, and the
absence of affirmative words in the last clause creating an obli-
gation to the plaintiff, and considering the nature of the busi-
ness transacted, renders it quite manifest that no other con-
struction was intended.   Moran and others, it seems, had been
a committee for the bondholders for another purpose, to effect
a reorganization of the company.   When that project fell
through, acting for themselves and the owners of the bonds in
their hands, and, as we must presume, with authority, made
this contract in such form as to put all the bondholders on the
same footing, if they chose to ratify their sale, and this could

only be done by including their bonds in the sale to the defendant, not as a sale by such bondholder, but by Moran and others. It is of some moment that the parties themselves so understood it. Kennedy & Co. notified the bondholders that " we have reserved the right to put in the bonds of those who have registered at the same price and on the same terms," etc., and the defendant refused to take any bonds except through Moran and others, and the plaintiff objected to this mode only on account of the commissions exacted.

It was conceded on the argument that if this construction was adopted, this action could not be sustained, although the plaintiff would not be without remedy. The right to exact commissions is not before us. That question might arise in a different action.

The judgment must be affirmed.

All concur except EARL, J., not voting.

Judgment affirmed.